UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
ELECTRONICALLY FILED

ESTATE OF WILLIAM G. HOWARD, )
                                )
      PLAINTIFF )
                                )
V. )  Case No.  3:12cv-750 S
                                )
MERCER TRANSPORTATION COMPANY, INC., )
                                )
Serve:  CT Corporation System )
          306 West Main Street, Suite 512 )
          Frankfort, KY  40601 )
                                )
JAMES L. STONE, )
          6100 Deep Creek Drive )
          Prospect, KY  40059 )
                                )
and )
                                )
HERBERT A. LIGON, JR., )
          4300 Iroquois Avenue )
          Nashville, TN  37205-3800 )
                                )
      DEFENDANTS. )

## COMPLAINT

For its Complaint against the Defendants, the Plaintiff alleges as follows:

### PARTIES

1. Plaintiff is the Estate of William G. Howard (the "Estate"), whose decedent William G. Howard ("Mr. Howard") died on March 22, 2008, a resident and citizen of the state of Florida. Pursuant to 28 U.S.C. § 1332(c)(2), Plaintiff is a citizen of Florida.

2. Two of Mr. Howard's children, William Jeffrey Howard and Jennifer Howard Hill, were appointed as Co-Executors of Mr. Howard's Estate by the Broward County District

1

Court, State of Florida, on May 12, 2009.  They remain the duly appointed and acting Co-Executors of the Estate.

3. Mercer Transportation Company, Inc. (the "Company) is an Indiana Corporation, authorized to conduct business in the Commonwealth of Kentucky, with its principal place of business at 1128 West Main Street, Louisville, Jefferson County, Kentucky 40203.  The Agent listed with the Secretary of State for service of process on the Company is CT Corporation System, 306 West Main Street, Suite 512, Frankfort, KY 40601.

4. Defendant, James L. Stone ("Defendant Stone"), is a citizen of Kentucky, with an address of 6100 Deep Creek Drive, Prospect, KY 40059-9343.  Defendant Stone owns one-third of the issued and outstanding shares of the Company, and is a party to the Buy-Sell Agreement described below.

5. Defendant, Herbert A. Ligon, Jr. ("Defendant Ligon"), is a citizen of Tennessee, with an address of 4300 Iroquois Avenue, Nashville, TN 37205-3800.  Defendant Ligon owns one-third of the issued and outstanding shares of the Company, and is a party to the Buy-Sell Agreement described below.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). The amount in controversy exceeds the sum specified by 28 U.S.C. § 1332(a).

7. Venue is proper pursuant to 28 U.S.C. § 1391(a)(1).

## FACTUAL BACKGROUND

8. At the time of Mr. Howard's death, Mr. Howard, Defendant Stone and Defendant Ligon (collectively the "Shareholders") each owned one-third (1/3) of the issued and outstanding shares of the Company. Mr. Howard's shares of the Company are now held as an asset of his Estate.

9. On June 11, 1996, the Shareholders and the Company entered into an "Amended and Supplemental Stock Purchase and Sale Agreement" (hereinafter referred to as the "1996 Agreement"). The 1996 Agreement is attached hereto as Exhibit A and is incorporated herein by this reference. The 1996 Agreement superseded a 1988 Agreement regarding the sale and purchase of shares of the Company.

10. Effective January 9, 2004, the Shareholders and the Company entered into a "First Amendment to Amended and Supplemental Stock Purchase and Sale Agreement" (hereinafter referred to as the "2004 Amendment"). The 2004 Amendment is attached hereto as Exhibit B and is incorporated herein by this reference. Under the terms of the 2004 Amendment, the Shareholders and the Company amended the 1996 Agreement. To the extent, if any, that the 2004 Amendment differs from the 1996 Agreement, the wording of the 2004 Amendment controls. The 1996 Agreement, as amended by the 2004 Amendment, is referred to hereinafter as the "Buy-Sell Agreement."

11. Paragraph 2.1 of the Buy-Sell Agreement provides: "The Estate of the deceased Shareholder shall have the right to offer all of the deceased Shareholder's stock to the Corporation and the Corporation shall purchase [the deceased Shareholder's shares]."

12. By letter dated September 21, 2008, the Estate offered all of the shares of the Company owned by the Estate to the Company pursuant to the terms of the Buy-Sell Agreement. A copy of that letter is attached hereto as Exhibit C and is incorporated herein by this reference.

13. By letter dated September 26, 2008, from the Company to the Co-Executors of the Estate, the Company stated that it would purchase all of the Estate's shares pursuant to the terms of the Buy-Sell Agreement. A copy of that letter is attached hereto as Exhibit D and is incorporated herein by this reference.

14. Paragraph 4.1(i) of the Buy-Sell Agreement provides that the purchase price for the shares is double the book value determined pursuant to the terms of paragraph 4.1(i). Pursuant to paragraph 4.1(i), the book value was calculated as of the fiscal year preceding Mr. Howard's death, 2007. Pursuant to paragraph 4.1(ii) of the Buy-Sell Agreement, the Company's earnings for 2007 were not included in calculating the Book Value. However, paragraph 4.1(iii), added by the 2004 Amendment, expressly provides that "the selling Shareholder's estate shall be entitled to his portion of the undistributed earnings for the period or year preceding the date of death . . . ."

15. Paragraph 5.4 of the 1996 Agreement provides, in pertinent part, that "all earnings of the Corporation as reflected by the K-1 issued by the Corporation during the year of the death and the five years thereafter shall be paid" to the Estate within a "period of twelve (12) months" following the end of each such year.

16. The plain language of paragraph 5.4 of the 1996 Agreement provides that the Estate is entitled to one-third of the earnings earned by the Company during the year of Mr. Howard's death, and one-third of the earnings earned by the Company during each of the five years after the year of his death.

17. In paragraph 5.4 of the 1996 Agreement, the term "earnings" is defined as all of the net earnings calculated in accordance with the applicable provisions of the Internal Revenue Code and reported to the Shareholders for federal income tax purposes on the Form K-1 issued by the Company as to each such year.

18. The 2004 Amendment added the following language to Paragraph 5.4:

> The provisions of this paragraph providing for payment of dividends for the five (5) years following the year of death shall apply only in the event of the election to sell by the Estate of a Shareholder party hereto or to purchase by the Corporation or the Shareholders as the result of the death of a Shareholder party hereto.

19. Amendments prevail over conflicting provisions in the agreement being amended.

20. The plain language added to paragraph 5.4 by the 2004 Amendment provides for "payment of dividends for the five (5) years following the year of death . . . ."

21. The plain language of the Buy-Sell Agreement reflects the intent of the parties that a deceased Shareholder would receive, "in addition to" double the book value of his shares, one-third of the Company's earnings earned during the year of his death, and one-third of the Company's earnings earned during each year of the five year period following the year of his death as consideration for selling the deceased Shareholder's one-third interest to the Company.

22. For example, one-third of double the book value of the Company calculated pursuant to paragraph 4.1(i) is $3,076,719, whereas one-third of the Company's earnings for 2011 exceeded $10 million. The right to one-third of the earnings for 2013, the fifth year of the five-year period after the year of Mr. Howard's death, is a material term of the Buy-Sell Agreement to the Estate.

23. Paragraph 5.2 of the Buy-Sell Agreement provides, in pertinent part, as follows:

> In the event of a redemption as a result of the death of any Shareholder, the Closing shall take place on the first calendar day after the end of the fifth fiscal year following the date of death of the Shareholder.

24. Pursuant to paragraph 5.2, the first calendar day after the end of the fifth fiscal (calendar) year following the date of death of Mr. Howard is January 1, 2014 and the Closing should therefore take place on the first business day of 2014.

## THE CONTROVERSY

25. Collectively, the foregoing provisions of the Buy-Sell Agreement entitle the Estate to: (1) double the book value of the Estate's shares of the Company calculated pursuant to paragraph 4.1(i); (2) one-third of the earnings of the Company earned during the year of Mr. Howard's death (2008); "plus" (3) one-third of the earnings of the Company for each year of the five-year period following the year of Mr. Howard's death (2009, 2010, 2011, 2012 and 2013, respectively), as reported on the Form K-1 issued by the Company for each such year; and (4) with a Closing on the transfer of the Estate's shares scheduled for the first business day in January 2014.

26. In a letter dated February 5, 2004, by which Robert Ackerson transmitted to Defendant Stone the draft of the 2004 Amendment, attorney Ackerson said that "under Section 5.4 of the existing [1996] Agreement the deceased Shareholder's estate does get two times book value *plus* earnings for the year of death and the five succeeding years thereafter." (underscoring in original). That letter is attached hereto as Exhibit E and incorporated herein by this reference.

27. On September 17, 2008, the year of Mr. Howard's death, Robert Ackerson, the attorney who drafted both the 1996 Agreement and the 2004 Amendment, sent to the Co-Executors of the Estate a draft of a letter by which they could exercise the Estate's rights to sell

its shares to the Company pursuant to the Buy-Sell Agreement. That document is attached hereto as Exhibit F and incorporated herein by this reference. Mr. Ackerson's draft interpreted the Buy-Sell Agreement as calling for payments "through the year 2013" and scheduled the Closing for January of 2014:

> It is our understanding that the stock will be retained by us until it is transferred on January 1, 2014. We further understand that pursuant to said Agreement [the 1996 Agreement and the 2004 Amendment] and Section 5.4 thereof, we shall be entitled to, at some point or upon closing, all of the earnings of the Corporation as reflected by the K-1 issued to the Estate for the year 2007 and each year thereafter through the year 2013 when any amounts unpaid will be due and payable.

28. Subsequently, the Company took the position that the Estate is entitled to one-third of the earnings of the Company for only the four (4) year period following the year of Mr. Howard's death. Specifically, the Company has informed the Estate that it is the Company's position that the Estate is not entitled to any portion of the earnings of the Company for 2013 and that the Closing should be scheduled for the first business day of 2013, rather than the first business day of 2014.

29. The Company takes the position that paragraph 5.4 of the 1996 Agreement means that the Estate is entitled to its share of the earnings for the year encompassed by the Form K-1 issued during the year of Mr. Howard's death and issued during the five years after Mr. Howard's death. Because the Form K-1 reports earnings for the prior year, the Company contends that the phrase "all earnings for the Corporation as reflected by the K-1 issued by the Corporation during the year of death" refers to earnings earned during 2007 (the year preceding death) rather than earnings earned during 2008 (the year of death).

30. But as a Shareholder of the Company, Mr. Howard was entitled to, and received, his share of the earnings for 2007, the year preceding his death.

31. Moreover, the Company's interpretation of paragraph 5.4 renders meaningless the provisions in paragraph 4.1(iii) of the 2004 Amendment which expressly provides that the Estate is entitled to its "portion of the undistributed earnings for the period or year preceding the date of death and excluded from Book Value [2007] plus the earnings for the period as set forth Section 5.4 hereof.".

32. No interpretation of the Buy-Sell Agreement should render any provision thereof meaningless and the 2004 Amendment prevails over any inconsistent provision of the 1996 Agreement. Because paragraph 4.1(iii) expressly provides for payment to the Estate for the year preceding Mr. Howard's death, paragraph 5.4 can only be read to address earnings earned during the year of his death and the five years thereafter.

33. The Company's interpretation of the reference to the Form K-1 in paragraph 5.4 of the 1996 Agreement results in the Estate receiving its share of the earnings of the Company for only a four (4) year period following the year of Mr. Howard's death. But that interpretation is contrary to the plain language added to paragraph 5.4 by the 2004 Amendment which plainly states that the five-year period is the "five (5) years following the year of death . . . ."

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT

34. Plaintiffs reiterate and reaffirm each and every allegation set forth in Paragraphs 1 through 33 of this Complaint.

35. Pursuant to the terms of the Buy-Sell Agreement, the Estate is entitled to one-third of the earnings of the Company earned during 2013, and a Closing date for the transfer to the Company of the Estate's shares of the Company on the first business day in January of 2014.

36. The Company has informed the Co-Executors that it is the Company's position that the Buy-Sell Agreement entitles the Estate to one-third of the earnings of the Company only

through the earnings earned during 2012, excluding the earnings earned during 2013, with a Closing in January of 2013, rather than in January of 2014.

37. By communicating that position to the Co-Executors, the Company has repudiated material terms of the Buy-Sell Agreement and has thereby materially breached the Buy-Sell Agreement.

38. The common law remedy of damages would not afford the Estate a full and adequate remedy for the injury resulting from the Defendants' failure to perform all the terms of the Buy-Sell Agreement, and the Court should therefore enter a decree in equity that the Defendants must specifically perform their obligations under the Buy-Sell Agreement by paying the Estate its share of the earnings of the Company earned in each year through December 31, 2013, with a closing date for the transfer of the shares on the first business day of 2014.

## SECOND CAUSE OF ACTION
## DECLARATION OF RIGHTS

39. Plaintiffs reiterate and reaffirm each and every allegation set forth in Paragraphs 1 through 38 of this Complaint.

40. There is an actual controversy between the Estate and the Defendants concerning the material terms of the Buy-Sell Agreement.

41. Pursuant to KRS 418.040, the Court should declare the rights of the parties by declaring that the Estate is entitled to one-third of the earnings of the Company earned during each year of the five year period following the year of Mr. Howard's death, through December 31, 2013, pursuant to the terms of paragraph 5.4 of the Buy-Sell Agreement.

WHEREFORE, Plaintiff prays for any or all of the following relief:

a. Entry of a judgment requiring Defendants to specifically perform their obligations under the 1996 Agreement and 2004 Amendment by paying the Decedent's estate one-third of the earnings of the Company earned during each year through December 31, 2013;

b. Entry of a judgment awarding Plaintiff money damages in an amount sufficient to compensate Plaintiff for the actual damages suffered as a result of the Defendants' breach of the Buy-Sell Agreement, plus interest thereafter on said sum at the applicable statutory rate, until paid;

c. Entry of a judgment declaring the rights of the parties by declaring that the Estate is entitled to one-third of the earnings of the Company earned during each year through December 31, 2013;

d. A trial by jury on all issues so triable;

e. That the Estate recover its costs incurred in this matter, including its reasonable attorneys' fees; and

f. Any and all other relief to which Plaintiff may appear to be entitled.

This 9th day of November, 2012.

Respectfully submitted,

/s/ Sheryl G. Snyder
Sheryl G. Snyder
Cory J. Skolnick
Frost Brown Todd LLC
400 West Market St., 32nd Floor
Louisville, KY 40202
Phone: 502-589-5400
Fax: 502-581-1087

*Counsel for Plaintiff*

LOULibrary 0124867.0596750 1272734v5