UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

WILLIAM JEFFREY HOWARD and
JENNIFER HOWARD HILL, on behalf of the
ESTATE OF WILLIAM G. HOWARD                                              PLAINTIFFS

v.                                                                NO. 3:12-CV-00750-CRS-DW

MERCER TRANSPORTATION COMPANY, INC., et al.                              DEFENDANTS

## MEMORANDUM OPINION

This matter is before the court on cross-motions for judgment on the pleadings (DNs 8, 14). Each party responded in opposition to the other's motion (DNs 13, 18). Each party also filed a reply in support of their motion (DNs 17, 21). Fully briefed, this matter is now ripe for adjudication.

For the reasons set forth below, the court will deny the Estate's motion for judgment on the pleadings and grant the Company's cross-motion for judgment on the pleadings.

## BACKGROUND

The following facts are undisputed. Plaintiffs William Jeffrey Howard and Jennifer Howard Hill represent the Estate of William G. Howard ("Estate") in a suit against the defendants, Mercer Transportation Company ("Company"). The Company is an Indiana Corporation with three shareholders. On June 11, 1996, the Shareholders and the Company entered into an Amended and Supplemental Stock Purchase and Sale Agreement ("1996 Agreement") (DN 1-2). The 1996 Agreement was subsequently amended by the First Amendment to Amend and Supplemental Stock Purchase and Sale Agreement ("2004

Amendment") (DN 1-3).  Collectively, the 1996 Agreement and the 2004 Amendment constitute the buy-sell agreement ("Buy-Sell Agreement").

The Estate represents the interests of William G. Howard ("Howard"), a shareholder of the Company.  At the time of Howard's death in March 2008, he, James L. Stone, and Herbert A. Ligon, Jr. each owned one-third of the Company's issued and outstanding shares.  Upon Howard's death, his shares became an asset of his estate.  Pursuant to Section 2.1(a) of the Buy-Sell Agreement,[1] the Estate submitted a written offer to sell Howard's shares to the Company (DN 1-4).  The Company responded in a letter dated September 26, 2008, in which it agreed to purchase all of the Estate's shares pursuant to the terms of the Buy-Sell Agreement (DN 1-5).

On November 9, 2012, the Estate filed a complaint[2] with this court, asserting breach of the Buy-Sell Agreement and a declaration of rights that it is entitled to (a) receive a one-third share of the Company's earnings for 2008 through 2013, and (b) remain a shareholder of the Company until January 1, 2014 (DN 1, at p. 8–10).  The Company asserted an alternative interpretation of the Buy-Sell Agreement, pursuant to which the Estate would (a) receive a one-third share of the Company's earnings for 2007 through 2012, and (b) remain a shareholder of the Company until January 1, 2013 (DN 13).  Both parties believe the language of the Buy-Sell Agreement is unambiguous and request that the court enter judgment in their favor.

**STANDARD**

In deciding a Rule 12(c) motion for judgment on the pleadings, a district court must take all of the "well-pleaded material allegations of the pleadings of the opposing party" as true, *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 526 (6th Cir. 2006), and may also take into account

---

[1] Section 2.1(a) of the Buy-Sell Agreement provides: "The Estate of the deceased Shareholder shall have the right to offer all of the deceased Shareholder's stock to the Corporation and the Corporation shall purchase [such shares]" (DN 1-3, at p. 2).
[2] The Estate filed an amended complaint on December 3, 2012, but the amendment did not affect the substance of its claim (DN 5).

"matters of public record, orders, items appearing in the record of the case, and exhibits attached to the [pleadings]." *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)). However, the court "need not accept the [non-moving party's] legal conclusions or unwarranted factual inferences as true." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). The motion should be granted only where the moving party "is entitled to judgment as a matter of law." *Rawe*, 462 F.3d at 526 (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).

## DISCUSSION

### I. Estate's Entitlement to Earnings

The parties dispute the period for which the Estate is contractually entitled to a proportional share of the Company's earnings for the years following Howard's death. Section 5.4 of the Buy-Sell Agreement outlines the procedure for distributing the Company's earnings to the estate of a deceased shareholder.

> In the event of the election by either party hereto to purchase or redeem said stock as a result of the death of any shareholder, then all earnings of the Corporation as reflected by the K-1 issued by the Corporation during the year of the death and the five years thereafter shall be paid to the estate of the deceased shareholder or beneficiary in the event of the transfer of the stock provided, however, the Corporation shall have a period of twelve (12) months following the end of any year to pay the dividend for the preceding year.

(DN 1-2, at p. 10) The Estate asserts that this provision unambiguously entitles it to a portion of the Company's earnings for 2008 through 2013. The Company also deems the provision unambiguous, but argues that the Estate is entitled to earnings for 2007 through 2012.

The construction and interpretation of a contract, including questions regarding ambiguity, are questions of law for the court to decide. *Island Creek Coal Co. v. Wells*, 113

S.W.3d 100, 103 (Ky. 2003) (citing *First Commonwealth Bank of Prestonburg v. West*, 55 S.W.3d 829, 835 (Ky. App. 2000)). Under Kentucky law, a contract "must be construed as a whole, giving effect to all parts and every word in it if possible." *City of Louisa v. Newland*, 705 S.W.2d 916, 919 (Ky. 1986). The clear and unambiguous provisions of the agreement control, and may not be rewritten by either party. *See, i.e.*, *Consolidated Jewelers, Inc. v. Standard Financial Corp.*, 325 F.2d 31 (6th Cir. 1963); *State Farm Mut. Auto. Ins. Co. v. Hobbs*, 268 S.W.2d 420 (Ky. 1954).

> [W]here the instrument is so clear and free of ambiguity as to be self-interpretive, it needs no construction and will be performed or enforced in accordance with its express terms. An ambiguous contract is one that is susceptible to more than one reasonable interpretation . . . . In reviewing contractual agreements, a court is not permitted to create an ambiguity where none exists, and an otherwise unambiguous contract does not become ambiguous merely because one of the parties asserts, post-hoc, that the contract failed to state what the parties truly intended.

*Fidelity Constr. Co., Inc. v. T.A. Blair, Inc.*, Nos. 2003-CA-000935-MR, 2003-CA-001035-MR, 2004 WL 1699770, at *5–6 (Ky. Ct. App. July 30, 2004) (internal citations omitted).

Section 5.4 is not ambiguous, and the court will enforce it in accordance with its plain meaning. The following language in Section 5.4 is significant: "all earnings of the Corporation as reflected by the K-1 *issued* by the Corporation *during* the year of the death and the five years thereafter shall be paid to the estate . . ." (emphasis added). We rely on two considerations in evaluating this provision. First, a K-1 issued in a given year reflects the prior year's earnings.[3] For example, a K-1 issued by the Company in 2008—the year of Howard's death—reflects the Company's 2007 earnings. Second, Section 5.4 states that the Estate is entitled to all of the Company's earnings as reflected by the K-1 issued *during* the year of the shareholder's death.

---

[3] *See* IRS Form 1120-S, U.S. Income Tax Return for an S Corporation, *available at*: http://apps.irs.gov/app/picklist/list/formsPublications.html;jsessionid=v92qGIo08DVEMWErJYQy3g__?value=1120s&criteria=formNumber&submitSearch=Find.

The use of the word *during* indicates that the Estate is entitled to the earnings reflected in the K-1 issued *in* 2008 (the year of Howard's death). Because a K-1 reflects the income earned in a prior year, the K-1s issued by the Company in the year of Howard's death (2008) and for the five years following the year of his death (2009 through 2013) reflect the Company's earnings for the years 2007 through 2012. Additionally, the Buy-Sell Agreement attaches payment to the year in which a K-1 is *issued*, rather than the year in which dividends are *earned*. Thus, the Estate is entitled to payment of the Company's earnings for the years 2007 through 2012, as reflected by the K-1s issued in 2008 through 2013. If the parties had intended another result, such as that proposed by the Estate, they would have so indicated in the Buy-Sell Agreement.[4] Because it is not ambiguous, this court must enforce the Buy-Sell Agreement in accordance with the language of Section 5.4 as it was actually written. *See L.K. Comstock & Co., Inc. v. Becon Constr. Co.*, 932 F. Supp. 948, 964 (E.D. Ky. 1994).

This interpretation of Section 5.4 is consistent with the revisions and additions contained in the 2004 Amendment. Paragraph 7 of the 2004 Amendment supplements Section 5.4 of the 1996 Agreement by adding the following language:

> The provisions of this paragraph providing for the payment of dividends for the five (5) years following the year of death shall apply only in the event of the election to sell by the Estate of a Shareholder party hereto or to purchase by the Corporation or the Shareholders as the result of the death of a Shareholder party hereto.

(DN 1-3, at p. 6). According to the terms of this provision, the Estate should receive *payment* of dividends for the five years following Howard's death. Though it makes no reference to a K-1, this provision corresponds with the Company's policy of distributing earnings to its shareholders

---

[4] If, for example, the word *during* was replaced with the word *for*, the Estate would be entitled to the Company's earnings for the years 2008 through 2013. In that context, the K-1 issued *for* the year of Howard's death would be the K-1 submitted to the IRS in 2009. Only in that situation would the Estate receive the Company's earnings *for* the years 2008 through 2013, as reflected by the K-1s issued in 2009 through 2014.

as dividends that are paid the following year (DN 13, at p. 13). This policy is also stated in Section 5.4 of the 1996 Amendment: "the corporation shall have a period of twelve (12) months following the end of any year to *pay* the dividend for the preceding year" (emphasis added) (DN 1-2, at p. 10). Thus, the 2004 Amendment's reference to the "payment" of dividends within five years after a shareholder's death is consistent with the 1996 Agreement's reference to the Company's policy of "paying" dividends within twelve months of the end of the preceding year.

Paragraph 6 of the 2004 Amendment, which amends Section 4.1 of the 1996 Agreement by adding Subsection 4.1(iii), is also consistent with the interpretation of Section 5.4 stated above. Subsection 4.1(iii) states as follows:

> It is understood and agreed that in addition to the payment of the purchase price as set forth herein, the selling Shareholder's estate shall be entitled to his portion of the undistributed earnings for the period or year preceding the date of death and excluded from Book Value plus the earnings for the period as set forth in Section 5.4 hereof.[5]

(DN 1-3, at p. 5–6). When read in context with Section 5.4, the application of Subsection 4.1(iii) can lead to contradictory results (DN 17, at p. 19; DN 13, at p. 14–15). However, when viewed in the context of the Buy-Sell Agreement as a whole, the subsection is a mere restatement of other provisions of the Agreement. In effect, Subsection 4.3(iii) makes it clear that the Estate is entitled to the earnings due to it pursuant to Section 5.4, in addition to the purchase price of the shares as outlined in Article 4.

## II. Estate's Right to Remain a Shareholder

Article 5 of the Buy-Sell Agreement sets forth the date on which the Estate must sell its shares to the Company (the "Closing"). Section 5.2 provides as follows: "In the event of a

---

[5] Subsections 4.1(i) and (ii) provide for the valuation of the Company's share price, or book value (DN 1-2, at p. 8–9; DN 1-3, at p. 6). Pursuant to these subsections, the Company's earnings from the year of the shareholder's death are excluded from book value. Earnings from the year prior to the shareholder's death are excluded from book value if a shareholder dies in the first half of the year, but earnings from the year of death are excluded from book value if a shareholder dies in the second half of the year.

redemption as a result of the death of any Shareholder, the Closing shall take place on the first calendar day after the end of the fifth fiscal year following the date of the death of the Shareholder" (DN 1-2, at p. 9).  The Estate claims that Section 5.2 permits it to remain a shareholder until January 1, 2014, on which date the Closing will occur.  The Company disputes the Estate's interpretation of Section 5.2, asserting that the Closing should have occurred on January 1, 2013.

The court finds that the language of Section 5.2 is not ambiguous, and we will enforce it in accordance with its plain meaning.  Howard died in March 2008.  As such, December 31, 2008 marked the end of the first fiscal year following his date of death and December 31, 2012 marked the end of the fifth fiscal year following his date of death.[6]  Consequently, the Closing date is January 1, 2013.[7]

In light of these considerations, we will grant the Defendants' cross-motion for judgment on the pleadings.  A separate order will be entered in accordance with this opinion.

Charles R. Simpson III, Senior Judge
United States District Court

September 24, 2013

---

[6] In total, the five fiscal years following Howard's March 2008 date of death ended in 2008, 2009, 2010, 2011, and 2012.

[7] The Closing will take place on the same day that the Company's obligation to pay dividends to the Estate is terminated.  This interpretation of Section 5.2 is favored because it directly corresponds with the period for which the Estate is entitled to the Company's earnings.  *See L.K. Comstock & Co., Inc. v. Becon Constr. Co.*, 932 F. Supp. 948, 964 (E.D. Ky. 1994) (in giving meaning to separate provisions of one contract, the court "must seek interpretations which promote harmony" between the different provisions).